# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAN E. MOLDEA<br>5766 Sherier Pl NW<br>Washington, DC 20016<br><br>    Plaintiff<br><br>v.<br><br>MICHAEL OVITZ<br>1234 Benedict Canyon Drive<br>Beverly Hills, CA 90212<br><br>    Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Dan E. Moldea, brings this action and complains and alleges as follows:

## PARTIES

1. Plaintiff Dan E. Moldea is a resident of the District of Columbia.

2. Upon information and belief, Defendant Michael Ovitz is a resident of the State of California.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. Section 1332, in that this is a civil action between citizens of different States and in which citizens of a foreign state are parties, and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over the parties because the acts giving rise to the Complaint took place in the District of Columbia and elsewhere.

5. Venue lies in this District pursuant to 28 U.S.C. Section 1391(a)(2).

## **BACKGROUND FACTS**

6. Plaintiff Dan E. Moldea is an investigative journalist. A best-selling author, Moldea has written nine books, including the recently published *Hollywood Confidential: A true Story of Wiretapping, Friendship, and Betrayal.*

7. Defendant Michael Ovitz is a former talent agent in the California entertainment industry and the target of a number of critical, high-profile articles authored by journalist Anita Busch.

8. On or about June 20, 2002, and roughly coinciding with Busch's ongoing negative coverage of Ovitz, Busch discovered that her car windshield had been damaged, and a note was attached containing the word "STOP." Also on the windshield was a tray covering a dead fish and a rose. Subsequently, Busch was the near victim of a hit-and-run automobile accident, which appeared consistent with a campaign of intimidation. For brevity, Plaintiff refers to these referenced events collectively herein as the "Incidents." Busch alleged that a campaign of harassment and intimidation followed the Incidents, although she initially asserted that many of the perpetrators and/or co-conspirators were unknown. Busch further alleged that a follow-on investigation revealed that her computer had been hacked and her phones wiretapped.

9. In the spring of 2003, Anita Busch invited Dan Moldea to help her publish a book about the Incidents and the events, prosecutions and civil litigation that followed. By agreement, Busch would relate the events, and Moldea would write the narrative, with Busch retaining certain editorial privileges. Because she was the principal subject of the book, Busch insisted that Moldea be its sole author. The book was tentatively titled, "A Woman at Risk." Proceeds would be split 60/40 in favor of Anita Busch.

10. Following investigation of the Incidents by state and federal law enforcement, criminal charges were brought against private investigator Anthony Pellicano, as well as his alleged cohort, Alexander Proctor, and others in connection to the threats, the wiretapping and the computer hacking. The arrests and prosecutions that followed were the source of tremendous public interest, with much reporting on the subject.

11. In May of 2004, Anita Busch filed a civil suit (the "Busch/Ovitz litigation") against a number of defendants, some named and others identified only as CLIENT DOE (for Pellicano's client) or DOES 1 through 100. The suit alleged, *inter alia*, conspiracy, intentional infliction of emotional distress, assault, invasion of privacy, and the violation of state penal and civil statutes.

12. Moldea performed in accordance with his obligations, but the relationship between Busch and Moldea ultimately unraveled in May 2005 over Busch's stated concern that publication could give cover or defenses to those named in her civil suit. By that time, Moldea had worked for free on this book project for two years. When Moldea complained about Busch's unilateral decision to stop their book project, Busch launched a series of false and misleading statements about Moldea, in what amounted to a running smear campaign.

13. In November of 2008, Busch amended her Complaint to identify Michael Ovitz as DOE 4 and CLIENT DOE, alleging that he had hired Pellicano to threaten/harass Anita Busch so as to intimidate and cause her harm and injury, and to destroy her career.

14. On August 18, 2011, Ovitz served Dan Moldea with a subpoena to appear at a deposition in the District of Columbia. It was clear Ovitz was seeking insight and evidence relating to Busch's state of mind at the time of and following the Incidents, particularly relating

to the timing of Busch's realization that Ovitz was likely DOE 4 and/or CLIENT DOE.

15. After withdrawing his subpoena, Ovitz forwarded Busch's deposition transcripts to Moldea from the Busch/Ovitz litigation which contained demonstrably false and defamatory statements about Moldea.

16. Ultimately, Ovitz dispatched his counsel to meet with Moldea and his attorneys in the District of Columbia to negotiate the parameters of a Common Interest Agreement that would allow for collaboration. Multiple meetings to discuss terms of the Agreement and documentary evidence also took place between Ovitz's counsel and Moldea in D.C. in September of 2011, October of 2015, and January of 2017. In every instance, Ovitz sent his agent, counsel Eric George, to Washington, D.C. to discuss, negotiate, and refine a Common Interest Agreement.

17. In an effort to correct the record, but recognizing the likelihood of retaliation against Moldea for cooperating with Ovitz, the parties determined to proceed in accordance with the Common Interest Agreement, the breach of which is at issue herein.

## THE COMMON INTEREST AGREEMENT

18. On November 9, 2011, the parties entered into the Common Interest Agreement, attached hereto as Exhibit A. The second paragraph aptly describes the intentions of the parties:

> [T]he Parties have concluded that they have legal interests in common relating to their discussions regarding the lawsuit of *Busch v. Pellicano* (Case No. BC316318) currently pending in Los Angeles Superior Court (the "Litigation"), and wish to cooperate in the pursuit of their common legal interest[.]

Ex. A, p. 1.

19. The Parties' respective interests were straightforward, and each are addressed in the Common Interest Agreement.

20. Ovitz generally wanted information relative to Busch for his defense in the Busch/Ovitz litigation. More specifically, he sought a written declaration from Moldea that would set out a number of potentially relevant operative facts, including when Busch first identified DOE 4 and CLIENT DOE to be Ovitz. The contract provided that "Moldea, in lieu of sitting for a deposition or producing documents pursuant to a notice of deposition served by Ovitz, will provide a declaration (the 'Declaration') that truthfully and accurately describes certain aspects of his collaboration with Anita Busch … on the manuscript 'A Woman At Risk.'"

21. Moldea's interest was different. He sought to end the malicious campaign waged by Busch against him, along with indemnification against further harm as a result of his cooperation with Ovitz. In light of ongoing attacks against Moldea by Busch, including statements made during the discovery phase of the Busch/Ovitz litigation, and to compensate Moldea for his time and energy to assist Ovitz's information-gathering efforts, Ovitz agreed: 1) to submit Moldea's Declaration to Busch's counsel and send a written demand for a retraction/apology from Busch for slanderous statements she had made about Moldea (Ex. A, ¶3, or, alternatively 2) if Busch refused to retract or apologize, Ovitz's counsel (also a signatory to the Common Interest Agreement) was to send a letter to Moldea reflecting counsel's opinion that Busch's statements were inaccurate. Ex. A, ¶4.

22. At all relevant times hereto, Moldea complied with the terms of the Common Interest Agreement. He spent hundreds of hours on Ovitz-requested/related tasks: he drafted a lengthy declaration for Ovitz's use and submission in the Busch/Ovitz litigation, spent hundreds of hours compiling documents for that purpose, traveled to California to testify at a hearing, and complied in all ways asked of him to assist Ovitz in his efforts.

23. Ovitz's counsel submitted the Declaration, appending it to his Motion for Summary Judgment, filed on or about October 31, 2012.

24. Beginning in late January of 2018, following settlement discussions that would resolve the Busch/Ovitz litigation, Moldea requested that Ovitz and his counsel comply with the dictates of paragraphs 3 and 4 of the Common Interest Agreement and demand from Busch the retraction and/or apology. Ovitz, through counsel, refused and similarly refused to issue the requisite opinion letter.

25. Paragraph 6 of the Common Interest Agreement sets forth damages for just this type of breach: "The parties agree that Moldea will suffer harm and prejudice in his personal life and professional career, equal to at least $250,000 if Ovitz's counsel fails to provide the Letter pursuant to paragraph 4."

## COUNT I
### Breach of Contract

26. Plaintiff realleges and reaffirms each and every allegation contained in Paragraphs 1 through 25 and incorporates the same as though fully set forth herein.

27. The Common Interest Agreement constitutes a binding contract by and between Plaintiff Dan Moldea and Defendant Michael Ovitz with regard to their cooperative efforts described herein.

28. Defendant Ovitz materially breached the Common Interest Agreement by failing to demand an apology/retraction from Busch for false statements made about Moldea, as required in paragraph 3 of the Agreement.

29. Defendant Ovitz further materially breached paragraph 4 of the Common Interest Agreement by failing to send a letter to Moldea that recites each of Busch's false statements, as

described in paragraph 3 of the Agreement, and offering Ovitz's counsel's option that such statements are inaccurate.

30. Plaintiff Moldea has been harmed by the breaches of contract alleged herein.

WHEREFORE, Plaintiff Dan Moldea demands judgment against Defendant Michael Ovitz in the amount of not less than $250,000 in compensatory damages, plus interest, costs, and such other and further relief as this Court deems proper.

## TRIAL BY JURY

Plaintiff requests a trial by jury on all counts so triable.

Respectfully submitted,

*/s/ Roger C. Simmons*

Roger C. Simmons, Esq. (Bar No. 12195)
Gordon & Simmons, LLC
1050 Key Parkway
Suite 101
Frederick, Maryland 21702
(301) 662-9122 (Office)
(301) 698-0392 (Fax)
rsimmons@gordonsimmons.com
*Counsel for Plaintiff, Dan E. Moldea*

March 12, 2018