# EXHIBIT A

## COMMON INTEREST AGREEMENT

This Common Interest Agreement (this "Agreement") is entered into as of November _9_, 2011 between Michael S. Ovitz ("Ovitz") and Dan Moldea ("Moldea") (each individually a "Party" and collectively the "Parties").

WHEREAS, the Parties have concluded that they have legal interests in common relating to their discussions regarding the lawsuit of *Busch v. Pellicano* (Case No. BC316318), currently pending in Los Angeles Superior Court (the "Litigation"), and wish to cooperate in the pursuit of their common legal interest;

WHEREAS, the Parties have determined it to be in their individual and common interests for them to share with each other information relating to the Litigation that is protected by the attorney-client privilege, the work product doctrine and by other applicable rules or rules of law, including, but not limited to, communications, client confidences, documents, memoranda of law, opinion letters, factual and/or opinion work product, transcript digests, witness statements, factual summaries, debriefing materials, discovery planning and/or any other media (collectively, the "Common Interest Information"), in furtherance of their common legal interest;

WHEREAS, the Parties recognize that the voluntary and "at will" exchange of the Common Interest Information will further their common legal interest and wish to avoid waiving any applicable legal privileges;

NOW THEREFORE, in furtherance of their common legal interest, and in consideration of the mutual promises and obligations of the Parties, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. The Parties agree that Moldea, in lieu of sitting for a deposition or producing documents pursuant to a notice of deposition served by Ovitz, will provide a declaration (the "Declaration") that truthfully and accurately describes certain aspects of his collaboration with Anita Busch ("Busch") on the manuscript "A Woman At Risk." As used herein, references to the Declaration include any exhibits attached to or documents referenced in the written declaration.

2. The parties agree that Ovitz shall reimburse Moldea for any travel-related or other expenses incurred in connection with the preparation of the Declaration, or any appearance by Moldea for the purpose of providing deposition or trial testimony.

3. Ovitz intends to submit the Declaration to counsel for Busch, together with a demand that Busch (a) dismiss the Litigation against Ovitz and (b) issue a writing to Moldea retracting, and apologizing for, Busch's deposition statements that: (i) "[Moldea] was inaccurate on so much stuff;" (ii) "He would make stuff up, just fabricate things. What I was feeling, what I was thinking. All sorts of stuff. It was -- it was just a constant problem;" (iii) "And then he would -- a lot of stuff was just completely inaccurate and I would throw it out;" (iv) "No, I mean the whole thing was bad. You don't understand. You would have had to have experienced it and then talked to him and then come --

and then find out what came back, and it's just like -- some of it was -- it was just unbelievably bad. Badly -- inaccuracies. There's inaccuracies throughout the whole thing;" (v) "I told Dan Moldea many, many times that the stuff he was writing was inaccurate;" (vi) "No. He just threw that in. He would that sometimes, he would just throw in stuff;" (vii) "Everything was -- there were mistakes everywhere. There were mistakes in everything;" (viii) "Because he made things up out of full cloth sometimes. And he was also -- he just wasn't adhering to real basic Journalism 101 rules;" (iv) "Because sometimes it got so absolutely bad that you just stopped reading and you call him up and say, 'I don't know what you are doing;'" and (v) "There is a reason to doubt everything he did."

4. Should Busch decline to issue the foregoing apology, Ovitz's counsel agrees to send a letter to Moldea that recites each of the deposition statements set forth above, and offers Ovitz's counsel's opinion that such statements are inaccurate (the "Letter"). The Letter shall be submitted by Ovitz to Moldea within a reasonable time after Busch's refusal to issue the foregoing apology.

5. The Parties further agree that Moldea may publish and use the Letter in any way not inconsistent with this Agreement.

6. The parties agree that Moldea will suffer harm and prejudice in his personal life and professional career, equal to at least $250,000, if Ovitz's counsel fails to provide the Letter pursuant to paragraph 4.

7. Should the Declaration be filed for any purpose in the Litigation, Ovitz shall take all reasonable and necessary steps to ensure that the Declaration is not submitted under seal or otherwise treated as confidential. Moldea will cooperate with Ovitz to ensure the Declaration is not treated as confidential.

8. In the event Moldea is personally sued for any reason(s) related to providing the Declaration or for publishing the Letter, Ovitz agrees to pay all reasonable attorney's fees and expenses incurred by Moldea in defending such claims, on the condition that Moldea is represented in any such proceeding only by Gordon & Simmons LLC and Browne George Ross LLP. In the event that Moldea is personally sued for providing the Declaration or for publishing the Letter in a jurisdiction where local counsel is needed, Moldea may choose local counsel. In the event Moldea is personally sued for any reason(s) related to providing the Declaration or for publishing the Letter, Ovitz agrees to indemnify Moldea against any judgment.

9. Common Interest Information exchanged under this Agreement shall be used only in connection with the Litigation and conducting such other activities as are necessary and proper to carry out the purposes of this Agreement.

10. Nothing contained in this Agreement has the effect of limiting a Party's use of information or documents in its possession prior to this Agreement.

11.     Nothing contained in this Agreement has the effect of limiting a Party's use of information that is not Common Interest Information, regardless of when the information is obtained.

12.     Nothing contained in this Agreement has an effect on the Joint Stipulation and Order Re: Handling of Confidential Material that has been entered in the Litigation and signed on June 11, 2009.

13.     Aside from the Declaration and the Letter, the Parties agree that all Common Interest Information is private and confidential information and is protected from disclosure to any third party by the attorney-client privilege, the work product doctrine, and by other applicable rules or rules of law.  The disclosure of Common Interest Information shall in no way and under no circumstances waive any attorney-client privilege, the work product doctrine or any other applicable privilege that a Party may assert with respect to such Common Interest Information.  Each Party shall take appropriate measures to maintain the confidentiality of all Common Interest Information. Whenever possible, Common Interest Information shall be labeled as "Confidential" or "Privileged Materials," but failure to so label any such Common Interest Information shall not constitute a waiver of any privilege nor a waiver of any right or obligation provided for in this Agreement. .

14.     Any disclosure or exchange of Common Interest Information by the Parties related to or in connection with the Litigation, including disclosures and exchanges made or to be made for the purposes described in the recitals to this Agreement, has been and shall be accomplished pursuant to the doctrine referred to as the "common interest" or "joint-defense doctrine" common interest rule or "joint defense doctrine", including as defined and discussed in United States v. Schwimmer, 892 F.2d 237, 243-244 (2d Cir. 1980), cert. denied, 493 U.S. 1071 (1990), as well as in United States v. McPartlin, 595 F.2d 1321, 1336-37 (7th Cir.), cert. denied, 444 U.S. 833 (1979) and recognized in Eisenberg v. Gagnon, 766 F.2d 770, 787 (3rd Cir.), cert. denied, 474 U.S. 946 (1985), Hunvdee v. United States, 355 F.2d 183 (9th Cir. 1965), Continental Oil Co. v. United States, 330 F.2d 347 (9th Cir. 1964), Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500, 502-503 (E.D.N.Y. 1986), Western Fuels Ass'n v. Burlington N.R.R., 102 F.R.D. 201, 203 (D. Wyo. 1984), In re LTV Secs. Litigation, 89 F.R.D. 595, 604 (N.D. Tex. 1981), In re Grand Jury Subpoena, 406 F. Supp. 381 (S.D.N.Y. 1975), Meza v. H. Muehlstein & Co., 176 Cal. App. 4th 969, 981 (2009), OXY Res. Cal. LLC v. Super. Ct., 115 Cal. App. 4th 874, 891 (2004), STI Outdoor LLC v. Super. Ct., 91 Cal. App. 4th 334, 341 (2001), 2 Weinstein's Evidence § 503(b)[06] (1980), and numerous other authorities and to the maximum extent recognized by law. Any Party who receives Common Interest Information as a result of this Agreement may only disclose the same to those persons identified in advance by the Party receiving the Common Interest Information and previously approved by the Party who furnished the Common Interest Information (collectively, the "Authorized Recipients"); provided, however, counsel to any Party providing any Common Interest Information may designate some or all of such Common Interest Information as "restricted" and counsel receiving such "restricted" Common Interest Information shall not disclose such "restricted" Common Interest Information to anyone, including the Authorized

301741.1

Recipients, without the consent of the Party who furnished the Common Interest Information. No Authorized Recipient may disclose any Common Interest Information to any person, other than its counsel or another Authorized Recipient, without the consent of the Party who first furnished the Common Interest Information.

15.  If any person not a Party to this Agreement requests or demands, by subpoena or otherwise, any Common Interest Information, counsel to the Party receiving the request or demand will immediately notify the other Party with rights in said information and its counsel. The person or entity seeking the Common Interest Information will be informed that such information remains privileged and/or otherwise protected, and may not be disclosed without the consent of the Party who furnished the Common Interest Information. The Party receiving the request or demand also shall take all steps necessary and appropriate to permit the assertion by the Party that furnished the Common Interest Information of all applicable rights and privileges with respect to the Common Interest Information and shall cooperate with the Party that furnished the Common Interest Information in the assertion of such rights and privileges.

16.  Nothing contained in this Agreement has the effect of transforming counsel for one Party into counsel for the other Party or creating an attorney-client relationship between one Party and the other Party's counsel.

17.  Each Party agrees that participating in this Agreement will not be used as a basis to seek the disqualification of the other Party's counsel in any future litigation, if such litigation should arise, between the Parties concerning issues unrelated to the subject matter of this Agreement.

18.  Any Party may withdraw from this Agreement at any time by providing written notice of that intention to the remaining Party. As to any Common Interest Information already obtained or exchanged under this Agreement, any Party which withdraws from this Agreement shall, not more than ten days after providing notice, return the originals of all tangible Common Interest Information to the Party who furnished them and destroy all copies thereof. A Party's withdrawal from this Agreement shall not affect such Party's obligations under this Agreement with respect to information previously exchanged. Specifically, once the Declaration is provided, Ovitz's obligations under paragraphs 2-8 of this Agreement are non-dischargeable.

19.  This Agreement contains the entire understanding of the Parties relating to their subject matters, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, are superseded hereby and thereby.

20.  No breach of any provision of this Agreement can be waived unless in writing. Waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.

21. All notices and demands under this Agreement shall be sent by registered or certified mail, postage prepaid or via overnight delivery, to the intended recipient as set forth below such Party's signature hereto. Notices shall be deemed given and demands made when received by addressee.

22. If any provision of this Agreement is deemed invalid or unenforceable, the balance of this Agreement shall remain in full force and effect.

23. This Agreement may be executed in counterparts and all counterparts so executed shall constitute one Agreement binding on all Parties. This Agreement may be executed and delivered via facsimile or electronic transmission which shall be binding on all parties.

24. This Agreement shall be construed and enforced in accordance with the laws of the State of California. The Parties do not agree to any specific venue or jurisdiction of any dispute arising out of or with respect to this Agreement.

25. This Agreement shall not create any agency or similar relationship between the Parties. Nor shall entry into this Agreement affect or alter any other obligations or agreements between any of the Parties hereto which now exist or which will come into existence in the future.

26. This Agreement shall not constitute or be used as evidence of any admission by either of the Parties as between themselves or by any person not a Party hereto.

27. This Agreement may be modified or amended only by a writing executed by the authorized representatives of the Parties.

[Signatures on following page]

Michael S. Ovitz

By:_____
Michael S. Ovitz

Notice Information:
Counsel for Michael S. Ovitz
Eric M. George
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067

Eric M. Geroge

By: _____

Eric M. George
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067

Dan E. Moldea

By: _/s/ Dan E. Moldea_____
Dan E. Moldea

Notice Information:
Counsel for Dan E. Moldea
Roger C. Simmons
Jodi Lynn Foss
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

Michael S. Ovitz

By: /s/ Michael S. Ovitz
Michael S. Ovitz

**Notice Information:**
Counsel for Michael S. Ovitz
Eric M. George
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067

Dan E. Moldea

By: _____
Dan E. Moldea

**Notice Information:**
Counsel for Dan E. Moldea
Roger C. Simmons
Jodi Lynn Foss
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

Eric M. Geroge

By: _____

Eric M. George
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067

301741.1

| | |
|---|---|
| Michael S. Ovitz | Dan E. Moldea |
| By:_____ | By:_____ |
| Michael S. Ovitz | Dan E. Moldea |

Notice Information:
Counsel for Michael S. Ovitz
Eric M. George
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067

Notice Information:
Counsel for Dan E. Moldea
Roger C. Simmons
Jodi Lynn Foss
Gordon & Simmons, LLC
1050 Key Parkway, Suite 101
Frederick, MD 21702

Eric M. Geroge

By: *[signature]*

Eric M. George
Browne George Ross LLP
2121 Avenue of the Stars, Suite 2400
Los Angeles, CA 90067

301741.1